UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**GARY L. GRAHAM,**
                **Plaintiff**

**v.**                                                Civil Action No.
                                                              3:05CV469-J

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
                **Defendant**

### MEMORANDUM OPINION

This case presents plaintiff Gary Graham's challenge to the decision of the Commissioner denying his claim to Disability Insurance Benefits. After examining the materials of record, the arguments of the parties and the applicable authority, the Court is of the opinion that the decision should be vacated and the matter remanded for further proceedings.

Mr. Graham filed his application on January 27, 2003, alleging that he had been unable to engage in any substantial gainful employment since August 15, 1999. After a hearing, the Administrative Law Judge ("ALJ") determined that Mr. Graham suffered from severe impairments that prevented him from performing any of his past relevant work, but that he retained the residual functional capacity for the full range of light work.

Mr. Graham argues that the ALJ erred in failing to list obsessive-compulsive disorder ("OCD") among plaintiff's severe impairments. The significance of finding an impairment "severe" or "non-severe" is whether the examination of the claimant's circumstances is taken to the next step in the sequential analysis. If any impairment is found severe, the analysis is taken

1

to the next step, such that the mere failure to classify a second impairment severe is irrelevant, so long as the actual impact of that impairment is considered as part of the whole.  To the extent plaintiff argues that a finding that a particular impairment is not severe can in itself constitute reversible error, he is incorrect.  In <u>Maziarz v. Secretary of Health & Human Services</u>, 837 F.2d 240, 244 (6th Cir. 1987), the Court established that there is no error in finding a particular impairment non-severe so long as the effect of that condition is considered in determining whether the claimant "retained sufficient residual functional capacity to allow him to perform substantial gainful activity."  Assuming, however, that Mr. Graham is actually contending that substantial evidence fails to support the ALJ's decision to omit non-exertional limitations from consideration, our attention turns to the ALJ's discussion of the functional impact of OCD.

   Mr. Graham's treating physician at the Hodgenville Clinic recorded in December of 2000 that his patient reported constantly having recheck things, such as whether the faucet is turned off, and that he has to write everything down that needs to be done.  Tr. 197.  However, the doctor did not record an additional diagnosis or refer Mr. Graham to a psychiatrist.

   In July of 2003, Mr. Graham was examined by consulting psychiatrist Suresh Kodali, M.D.  Dr. Kodali reported that Mr. Graham presented with the statement, "I think I have OCD."  Dr. Kodali noted that Mr. Graham complained of having had compulsive symptoms since 1999, but further noted that Mr. Graham continued to work until his gout made him leave his job in 2000. Dr. Kodali did not state that he observed any OCD symptoms, but she recorded the patient's symptoms "as he reports them."  Tr. 150.   Dr. Kodali included a diagnosis of OCD in

his report. Dr. Kodali assigned a Global Assessment of Functioning rating of 50.[1]

Dr. Kodali explicitly opined that Mr. Graham had the capacity to understand and remember simple, "but maybe not the complex" tasks, the ability to complete simple one to two-step tasks, the ability to relate with coworkers and supervisors, the ability to deal with workplace stressors, and the ability to concentrate in order to complete work tasks. Tr. 152. These same limitations (i.e., no complex tasks; limitation to simple one to two-step tasks) were adopted by non-examining consultant, Lea J. Perritt, Ph.D., Tr. 155. These limitations were not, however, incorporated into the hypothetical questions posed to the vocational expert at the hearing. See Tr. 272-275. Rather, the ALJ presented only two scenarios, both involving only exertional considerations.

The ALJ asked the vocational expert to consider a person who could do medium level work, but could only occasionally climb ladders, ropes and scaffolds. The expert identified a number of jobs, all in the medium category. Tr. 274. The ALJ next asked the expert to assume weight limitation of 10 to 15 pounds, the need for minimal walking and a combination of sitting and standing <u>and</u> to assume the person would need to lie down several hours a day. In response, the expert was unable to identify any jobs. Tr. 274. Ultimately, the ALJ did not rely on

---

[1] According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuumof mental health-illness." DSM-IV at 32. The range 41-50 is described as appropriate for "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

vocational expert testimony, but used only the Medical-Vocational Guidelines ("the Grids"). Finding that Mr. Graham was capable of the full range of light work (i.e., without the limitations described by Dr. Kodali and Dr. Perritt), the ALJ used the Guidelines to reach a finding of "not disabled."

If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6 th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984).

Nonetheless, substantial evidence must be determined from the record *as a whole*. See Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.1984); see also Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir.1978) (stating that "the Court may not base its decision on a single piece of evidence and disregard other pertinent evidence in evaluating whether substantial evidence

4

exists."); cf. Trudell v. Apfel, 130 Supp.2d 891, 894 (E.D.Mich.2001) (proposing that the substantial evidence standard does not permit a selective reading of the record). An "ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." Diaz v. Chater, 55 F.3d 300, 306 (7th Cir.1995) (citing Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994)).

      In light of the medical evidence regarding Mr. Graham's limitation to "simple tasks," as well as his own testimony and his reports to his treating physicians regarding his compulsions to keep checking things, the Court is unable to conclude that the ALJ considered the record as a whole. This prevents the Court from determining whether substantial evidence supports the ALJ's determination that Mr. Graham suffers from no non-exertional impairments, and requires remand of this matter for further proceedings.